IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM T., JR., | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:21-cv-00550 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| KILOLO KIJAKAZI, | ) By:   Hon. Thomas T. Cullen |
| Acting Commissioner of Social Security, | )         United States District Judge |
| | ) |
| Defendant. | ) |

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge,[1] for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Ballou filed a report and recommendation ("R&R") on November 30, 2022, recommending that this court deny Plaintiff William T.'s ("William") motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the Commissioner's final decision. William has filed objections to the R&R and the Commissioner responded, making this matter ripe for the court's consideration. For the reasons discussed below, the court will overrule William's objections, adopt Judge Ballou's R&R in its entirety, and grant the Commissioner's summary judgment motion.

## I.   BACKGROUND

On August 23, 2019, William filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act") (R. 171–177). *See* 42 U.S.C. §§ 401–433 (2023). In his application, William alleged that he had been disabled since he underwent a total right

---

[1] Judge Ballou was confirmed as a United States District Judge for this court on March 7, 2023.

knee replacement on December 17, 2018. (R. 52.) William asserted that, "because [he has] permanent restriction of 4 hours a day for standing and no kneeling or squatting," he was unable to work. (R. 170.) The Commissioner denied William's claims initially (R. 52–60) and again after reconsideration. (R. 62–71.)

Plaintiff then requested a hearing before an Administrative Law Judge; on February 25, 2021, William appeared with his attorney before Administrative Law Judge Jeffrey Schueler ("the ALJ"). (*See* R. 30–51.) Plaintiff and a vocational expert, Darren Wright, both testified at the hearing. (*Id.*) In a written decision dated March 11, 2021, the ALJ determined that William was not disabled within the meaning of the Act "from December 17, 2018, through the date of [his] decision." (*See generally* R. 15–25.) The ALJ found that William suffered from "knee degenerative joint disease with right knee replacement" and "obesity," but that neither impairment—singularly or in combination—met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18 (citing 20 C.F.R. §§ 404.1520(d), 440.1525 & 404.1526).)

After consideration of the full record, the ALJ concluded that William had the residual functional capacity ("RFC") to perform light work (as defined in 20 C.F.R. § 404.1567(b)), with the added limitations that he could only "occasionally climb, balance, stoop, kneel, crouch, or crawl." (R. 19.) Considering William's past work experience in maintenance, the ALJ concluded that he could not perform his past relevant work, although there existed a sufficient number of jobs in the national economy that he could perform, such as a marker or classifier. (R. 23–24 (citing 20 C.F.R. § 404.1569 & 404.1569(a)).) Accordingly, the ALJ

determined that William was "not disabled" and denied his application for benefits. (*See* R. 24–25.)

William appealed the ALJ's decision, but his appeal was denied. Accordingly, the ALJ's decision became the final decision of the Commissioner on September 13, 2021, the date of the Appeals Council's decision. (*See* R. 1–3.)

On October 20, 2021, William filed suit in this court to challenge the final decision of the Commissioner. (ECF No. 2.) By standing order and under the authority granted in 28 U.S.C. § 636(b)(1)(B), the court referred the case to then-United States Magistrate Judge Robert S. Ballou for consideration. *See* W.D. Va. Standing Order 2021-21 (Oct. 12, 2021). On April 29, 2022, William filed a motion for summary judgment (ECF No. 14), and the Commissioner filed a motion for summary judgment on May 28 (ECF No. 16). On November 30, Judge Ballou filed a report and recommendation ("R&R"), recommending that the court deny William's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision of the Commissioner. (ECF No. 18.) William filed timely objections on December 14 (ECF No. 19), and the Commissioner responded on December 21 (ECF No. 21). Accordingly, this matter is now ripe for review.

## II. STANDARDS OF REVIEW

### A. District Court Review of Magistrate Judge Decision

Federal Rule of Civil Procedure 72(b) provides that, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." The objection requirement set forth in Rule 72(b) is designed to "train[ ] the attention of both the district court and the court

of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of the objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

*Id.* The district court must determine *de novo* any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations," de novo review is not required. *Diprospero v. Colvin*, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (cleaned up) (quoting *Howard Yellow Cabs, Inc. v. United States*, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." *Camper v. Comm'r of Soc. Sec.*, No. 4:08cv69, 2009 WL 9044111, at *2

(E.D. Va. 2009), *aff'd*, 373 F. App'x 346 (4th Cir.); *see Midgette*, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only those portions of the report or specified proposed findings or recommendations to which objection is made.") (cleaned up). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." *Moon v. BWX Technologies*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012); *see also Arn*, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed . . . .").

Simply put, rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Objections that simply reiterate arguments raised before the magistrate judge are construed as general objections to the entirety of the report and recommendation. *See Veney v. Astrue*, 539 F. Supp. 2d 841, 844–45 (W.D. Va. 2008). As the court noted in *Veney*:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." *Howard* [*v. Sec'y of Health & Human Servs.*], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks"; instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. *Id.*

### B. Judicial Review of Social Security Determinations

It is not the role of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. *Perales*, 402 U.S. at 401; *Laws*, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); *Perales*, 402 U.S. at 401.

### III. WILLIAM'S OBJECTIONS[2]

William's objections are mainly conclusory, containing little analysis and devoid of case, statutory, or regulatory support,[3] and so far as the court can discern, are carbon copies of arguments made to the magistrate judge. As one court aptly put it, the objection process is not a claimant's opportunity for a "second bite at the apple." *Veney*, 539 F. Supp. 2d at 846. Many of William's objections could (and should) be overruled because they either improperly reiterate arguments that were made to, and thoroughly addressed by, the magistrate judge, or ask this court merely to reweigh the evidence in his favor.

Nevertheless, the court will address William's objections insofar as they fall into two broad categories (incidentally, the same broad categories he raised with the magistrate judge): first, that the ALJ failed to conduct a proper function-by-function analysis, *see* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996), and failed to consider medical evidence that contradicted his conclusion; and second, that the ALJ erred in his consideration of William's activities of daily living and the opinion of Dr. Waldrop, the physician who performed William's total knee replacement. In their totality, William's objections basically take issue with every reasoned conclusion of the magistrate (and ALJ) that runs counter to his position. While this is plainly an abuse of the objections process, the court will address them in turn.

---

[2] Detailed facts about William's impairments and medical and procedural history can be found in the R&R (ECF No. 18) and administrative transcript (ECF No. 9) and will not be repeated here unless they are relevant to the objection under consideration.

[3] Plaintiff put so little effort into his objections that he fails to cite to a single case, statute, or regulation. The court suspects that the bulk of his objections were "copied and pasted" from his summary judgment brief.

**Objection #1: "Physical RFC and Function by Function Analysis"**

As his first objection, William contends that the ALJ's decision does not include the narrative discussion required by SSR 96-8p, and that the magistrate judge "erred in concluding the [ALJ's] decision contains sufficient information to allow meaningful review." (Pl.'s Obj. p. 1 [ECF No. 19].)

SSR 96-8p was intended to "state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits under titles II and XVI" of the Act. SSR 96-8p, 1996 WL 374184, at *1. "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* As it relates to William's objection, SSR 96-8p requires that an ALJ's RFC determination

> include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7. Without offering any detail, William contends the ALJ did not include this narrative discussion, lacked sufficient information to allow meaningful review, and failed to consider conflicting medical evidence. But William's scant, conclusory arguments are unpersuasive.

First, the ALJ included the requisite narrative discussion. In his analysis, the ALJ discussed, in detail, William's medical history and his treatment following a full right knee replacement on December 17, 2021. In fact, the ALJ also included relevant medical history from before William's surgery, briefly recapping what led William to seek treatment and, ultimately, his knee replacement. (*See* R. 20; 425–438.) From there, the ALJ summarized William's treatment and improvement, highlighting William's own statements concerning that improvement. For example, the ALJ pointed out that, approximately one and a half months after his surgery (January 2019), William reported to his physical therapist that he "had done well after his last visit," "was able to walk 1.5 laps around the mall before needing a rest break," "was doing much better with steps," and "[h]e could ambulate on uneven ground, though he was slow and careful. Squatting was easier, though it was limited." (R. 20; *see* R. 473–477.) Three months out from surgery (March 2019), the ALJ noted that William reported "he was able to do five hours of work at home with more than half the time spent standing without 'paying for it.'" (R. 21; *see* R. 510.) The next month (April 2019), William reported that his "knee [was] doing well overall," he offered "no new complaints" (R. 514), was "doing better every day" and was "able to ride a bicycle over the weekend without significant difficulty" (R. 519), and his physical therapist noted that William "could climb stairs, squat, and walk on uneven surfaces without difficulty" (R. 523). His physical therapist even reported that William had made "excellent progress" with his physical therapy and discharged him with a home exercise program. (R. 523.)

The ALJ also noted that, in May 2019, William met with his provider, Dr. Preston Waldrop, who remarked that William stated he was "doing just fine" and that he believed

William was "doing just fine . . . 5 months out from his knee replacement." (R. 21; *see* R. 406.) And when William met with his surgeon one year after his surgery, William stated "he [was] doing quite well," with "minimal if any pain in the knee whatsoever . . . ." (R. 447; *see* R. 21–22.)

After a thorough recitation of the medical evidence in the record, the ALJ adequately and appropriately provided a narrative discussion explaining how and why he arrived at the RFC. He highlighted William's improvement throughout his physical therapy, the lack of self-reported pain or difficulties, and that, six months after the surgery, William "had returned to essentially normal functioning." (R. 22.) On this record, the court has no trouble determining how the ALJ reached his conclusions or the evidence on which they were based. The ALJ's narrative discussion is more than sufficient, and his ultimate conclusion is supported by substantial evidence.

William further argues that the ALJ's RFC narrative is insufficient because he "ignored the evidence of record documenting plaintiff's continued right knee range of motion in May of 2019." (Pl.'s Obj. p. 2 [ECF No. 19].) But William is incorrect.[4] The ALJ specifically cited William's range of motion in May 2019, and his discussion noted that even his provider was not concerned:

> On May 13, 2019, the claimant met with his surgery provider again. The claimant felt he was doing "just fine." He was not taking any medications routinely. His pain scale level was zero. On examination, his range of motion in the knee was 5 degrees

---

[4] But even if he was correct, "an ALJ is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed in the Administrative Record." *Blackwell v. Colvin*, No. 1:14-cv-00085, 2014 WL 7339132, at *6 (W.D.N.C. Dec. 23, 2013) (quoting *Parks v. Sullivan*, 766 F. Supp. 627, 635 (N.D. Ill. 1991)); *see also Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.").

> to 120 degrees. He had a very minimal effusion. The stability of the knee was otherwise good. He had no tenderness. The provider assessed the claimant was doing fine, **and provider did not see anything of concern**. The claimant said he needed restrictions in regard to his work. The provider gave the limitation of lifting/carrying 50 pounds[5], and the provider did not want him squatting or kneeling. The provider stated that he should limit climbing stairs permanently. The provider planned to see him in a year.

(R. 21 (emphasis added); *see* R. 406–07.) William did not offer any argument or discussion in support of this objection (save for scattered references to the R&R, the ALJ's written decision, and William's medical records), so the court is unable to understand the nature of an objection that is so plainly contradicted by the Record. In any event, if William's provider was not concerned by his range of motion in May, the court sees no basis to upset the ALJ's well-reasoned decision.

William also contends that the ALJ "never explained how he arrived at his conclusion that because plaintiff was able to mow two yards and sat with a lot of pain, he is able to sit, stand, and walk frequently." (Pl.'s Obj. p. 2.) But this objection misstates the ALJ's discussion. While it is true that the ALJ cited Plaintiff's abilities as *one* basis for his conclusion, it was not the only one. He also noted that *William's own provider* "did not give particular standing/walking or sitting limitations." (R. 22.) Moreover, when he cited William's ability to mow two yards, the ALJ noted that it did not "increase[e] his symptoms," which indicated "he could stand/walk frequently." (*Id.*; *see also* R. 520.) The ALJ's narrative discussion also notes Williams *continued* improvement *during and after* his physical therapy, all of which informed his ultimate

---

[5] It is worth noting that, in some respects, the ALJ's RFC is more restrictive than the limitations William's provider imposed on his work. By finding that William was only able to perform "light work," the ALJ limited William to "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

conclusion. (*See* R. 23.) And finally, the ALJ noted that the State Agency recommendations were "consistent with the residual functional capacity." (*Id.*; *see also* R. 56–57, 68–69.) In total, it is clear that William's ability to mow two yards "without increasing his symptoms" (R. 520) was but one of several factors the ALJ considered in reaching his conclusion.

Because the ALJ's narrative discussion included a thorough and sufficient recitation of the relevant medical evidence and adequately explained how he reached his conclusion, William's first objection is overruled.

### Objection #2: "Subjective Allegations and Dr. Waldron's [*sic*] Opinion"

In his second objection, William takes the same shotgun approach as his first, assigning error to the magistrate judge and the ALJ with nearly every sentence. But boiled down to its essence, William objects to the treatment of his subjective complaints, the treatment of his activities of daily living (a partially recycled argument from above), and the opinion of Dr. Waldrop,[6] the surgeon who performed his total knee replacement. As above, though, his arguments are far from persuasive.

First, William contends that the "Report and Recommendation erred in concluding that the ALJ supported his finding that plaintiff' allegations were not entirely consistent with the medical evidence and other evidence in the record." (Pl.'s Obj. p. 2.) As discussed more fully above, though, the ALJ gave a detailed and accurate summary of William's medical history, including his marked improvement with physical therapy post-surgery. This was the reason the ALJ gave for discounting William's subjective complaints:

---

[6] William's counsel incorrectly refers to his physician as "Dr. Waldron." Dr. Preston Waldrop performed William's surgery. (*See, e.g.*, R. 291 (discharge summary following a total knee replacement that lists "Waldrop, Preston A MD" as the attending physician); 406–414 (three progress notes signed by "Preston Waldrop, MD"); 447–449 (progress note signed by "Preston Waldrop, MD").)

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .
>
> The record shows the claimant had severe right knee degeneration before the alleged onset date. He received a right total knee replacement at the time of the alleged onset date. He was discharged from physical therapy in April 2019 after meeting all his goals. He was able to climb stairs, squat, and walk on uneven surfaces then. He did not report pain to his surgical provider in May 2019. That provider did not see findings of concerns in May 2019. Thus, the record indicates that six months after his surgery, he had returned to essentially normal functioning.
>
> The later records continue to indicate this. He reported to the provider in December 2019 he was doing quite well, and the provider assessed he was doing fine. The record does not show visits to the provider or complaints about the knee subsequently.

(R. 22.) For the same reasons noted in the court's analysis of William's first objection, the ALJ's conclusion is supported by substantial evidence. William's complaints of total disability are inconsistent with his medical records and his treatment history. *See, e.g.*, *Hardy v. Astrue*, Civil Action No. 6:10-2972-DCN-KFM, 2012 WL 1030152, at *13 (D.S.C. Jan. 6, 2012) (holding that the ALJ properly considered "the plaintiff's improvement with medications, physical therapy, and treatment" when assessing her credibility and discounting her subjective complaints); *Bostic v. Astrue*, No. 3:10CV630-GCM-DSC, 2011 WL 3667219, at *5 (W.D.N.C. July 22, 2011) (noting that a "[p]laintiff's allegations of total disability were not supported by her physical therapy records, which documented significant improvement and reduction of pain.").

William also assigns error to the ALJ's treatment of his activities of daily living: "The Report and Recommendation erred in concluding the ALJ appropriately considered plaintiff's daily activities." (Pl.'s Obj. p. 2.) This assigned error overlaps with the claimed error in William's first objection, that "the ALJ never explained how he arrived at his conclusion that because plaintiff was able to mow two yards and say with a lot of pain, he is able to sit, stand, and walk frequently." (*Id.*) In his second objection, William goes on to assert that "the ALJ never explained how plaintiff's ability to perform the limited, intermittent activities cited by the ALJ establish plaintiff can perform substantial gainful work on a sustained basis." (*Id.* p. 3.) The court disagrees.

William's argument might have been persuasive if his activities of daily living were the *only* facts relied on by the ALJ. But here, the ALJ cited William's activities along with the fact that his provider "did not give particular standing/walking or sitting limitations." (R. 22.) Additionally, the ALJ cited the State Agency reviewers who "gave the claimant limitations consistent with the residual functional capacity." (R. 23.) These are two important considerations that William ignores.

As it relates to William squatting or kneeling, Dr. Waldrop's "absolute prohibition" on such activities "is not supported by the provider's lack of findings or concern in [William's May 2019] visit, as well as [Dr. Waldrop's] assessment that the claimant was functionally fine in December 2019." (R. 23.) The ALJ also noted that such a prohibition was "not supported by the claimant's achievements of all goals in physical therapy." (*Id.*) Moreover, in April 2019 when William was released from physical therapy, his therapist stated that he had "[n]o difficulty squatting to retrieve items from the floor" and could squat "without difficulty." (R.

523.) Clearly, the ALJ was not relying solely on William's activities of daily living, and it is not hard to see why the ALJ rejected a "total prohibition" on squatting that was offered *8 months* after William was released from therapy and without an intervening setback to his recovery noted anywhere in his medical records.

As the final component of his second objection, William takes issue with the ALJ's treatment of Dr. Waldrop's opinions: "The Report and Recommendation also erred in concluding the reasons given by the ALJ for rejecting Dr. Waldron's [*sic*] limitations relating to squatting, kneeling, climbing stairs, and crouching, are adequately explained and supported by substantial evidence in the record." (Pl.'s Obj. p. 4.) The court finds this assertion meritless.

Although Dr. Waldrop did state, in May 2019, that he did not want William "squatting or kneeling" (R. 406), in December 2019 he noted that William was "doing just fine," "[h]e has no particular effusion [and] his knee stability is reasonable," and "[f]unctionally [he] seems to be doing just fine." (R. 447.) Although Dr. Waldrop stated that he thought William's prior limitations "still stand," the ALJ found that opinion contravened by the other evidence in the record. (*See, e.g.*, R. 523 (noting that William has "[n]o difficulty squatting").)

Under the applicable regulation, "[w]hen a medical source provides one or more medical opinions," that opinion is reviewed using five factors: (1) supportability, (2) consistency, (3) relationship, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(c)(1)–(5). "The factors of supportability . . . and consistency . . . are the most important factors" and must be specifically addressed by the ALJ. *Id.* § 404.1520c(b)(2). Here, the ALJ mentioned the limitations that Dr. Waldrop placed on William in May 2019 (and apparently left in place in December 2019 (*see* R. 406, 447)), but found that Dr. Waldrop's

limitations were not "supported by the provider's lack of findings in concern in that [May 2019] visit, as well as his assessment that the claimant was functionally fine in December 2019." (R. 23.)

As to the consistency of Dr. Waldrop's opinion with the medical evidence and other evidence in the record, although he did not state specifically that Dr. Waldrop's opinions were "not consistent" with the medical evidence in the record, *see Tina B. v. Kijakazi*, Civil No. 3:21-cv-000348, 2022 WL 2057739, at *7 (E.D. Va. May 6, 2022) ("The fact that the ALJ does not specifically use the term 'supportability' bears no relevance to this analysis . . . ."), he laid out the inconsistencies very clearly—even within Dr. Waldrop's own records. For example, although Dr. Waldrop opined that William should never kneel or squat (R. 406), he reported at William's December 2019 visit that William "functionally seems to be doing just fine" (R. 447). According to Dr. Waldrop's records from that visit:

> Examination is knee on the right side today shows range of motion 0° to 100 and 20° stability his knee in extension is excellent he has no effusion of the knee. In flexion he does have 1+ plate however this is not particularly painful. Stability at 0 is to and 30° is quite good.

(R. 447). And in his treatment notes, Dr. Waldrop only says he "think[s]" his prior activity modifications still stand, but he went on to state: "We once again discussed activity modification. Avoidance of high-impact activities. Maintaining appropriate weight. Avoiding lifting greater than 50 pounds with any significant regularity." (R. 447–48.) Dr. Waldrop had no intention of seeing William again for three years unless his symptoms reoccurred. (R. 448.) Dr. Waldrop's conservative treatment post-surgery, as indicated by his treatment notes, certainly undercut the consistency of his opinion with the overwhelming weight of the other

medical evidence, and the ALJ was correct to point this out. *See, e.g.*, *Shrader v. Kijakazi*, 2023 WL 2571539, at *6 (E.D. Mo. Mar. 20, 2023) (citing a claimant's conservative treatment as a basis to discount a medical opinion under 20 C.F.R. § 414.1520c); *Neil F. v. Comm'r of Soc. Sec.*, 2022 WL 1311695, at *10 (E.D. Va. Feb. 15, 2022) (finding that a claimant's conservative treatment was inconsistent with physician's opinion and was a proper consideration when reviewing medical opinion under 20 C.F.R. § 404.1520c); *Pamela M. v. Kijakazi*, Civil Action No. 5:20-cv-00043, 2022 WL 421213, at *8 (W.D. Va. Feb. 11, 2022) (Report and Recommendation) (considering conservative treatment was one of several reasons to discount a medical opinion).[7]

In sum, the court finds that the ALJ appropriately reviewed Dr. Waldrop's opinions and that his bases for finding those opinions "partially persuasive" were supported by substantial evidence. The ALJ's decision to discount part of Dr. Waldrop's limitations will not be disturbed.

William makes a passing allegation that the ALJ ignored other medical evidence in the record, but he does not identify that evidence, other than by citing to his own summary judgment brief. (*See* Pl.' Obj.'s p. 3.) Although it is not a reviewing court's job to search through a claimant's voluminous medical records to try to find evidence that may lend support to his arguments, the court has carefully reviewed and considered William's medical records and satisfied itself that the ALJ thoroughly and properly considered the same, including the records of each visit to his treating physician. While it is certainly true that the ALJ did not quote every

---

[7] The Report and Recommendation was adopted by the presiding district judge on March 14, 2022, but it is not available on any electronic reporter. *See* Order [ECF No. 20], *Pamela M. v. Kijakazi*, Civil Action No. 5:20-cv-00043 (W.D. Va. Mar. 14, 2022).

notation in those records in his decision, "an ALJ is not tasked with the 'impossible burden of mentioning every piece of evidence' that may be placed in the Administrative Record." *Blackwell v. Colvin*, No. 1:14-cv-00085, 2014 WL 7339132, at *6 (W.D.N.C. Dec. 23, 2013) (quoting *Parks v. Sullivan*, 766 F. Supp. 627, 635 (N.D. Ill. 1991)). Rather, a review of the ALJ's decision satisfies this court that he considered the entire record, drew an accurate and logical bridge between the evidence and his conclusions, and supported those conclusions with substantial evidence. *See Petry v. Comm'r, Soc. Sec. Admin.*, No. 16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (noting than an ALJ should build "an accurate and logical bridge from the evidence to his conclusion"). The ALJ unquestionably did as much in this case. Accordingly, William's objections will be overruled.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, William's objections will be overruled, Judge Ballou's R&R will be adopted in its entirety, William's summary judgment motion will be denied, and the Commissioner's summary judgment motion will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 27th day of March, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE